**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

IN RE:                                              Case No.:21-00066-ESL

**LIZETTE ALEJANDRO PENA**,                         **Chapter 7**

    **Debtor.**
_____/

**FORMER CHAPTER 7 TRUSTEE'S RESPONSE TO ORDER REQUIRING THE
CHAPTER 7 TRUSTEE TO STATE POSITION REGARDING STANDING TO
PURSUE THE DISGORGEMENT OF FEES OF DEBTOR'S FORMER
COUNSEL IN LIGHT OF THE CONVERSION TO CHAPTER 13
(DKT. NO.__123)**

TO THE HONORABLE COURT

    COMES NOW, Former Chapter 7 Trustee, Noreen Wiscovitch-Rentas ("Trustee"), and

respectfully files her position as to "standing" to request the disgorgement of Former Debtor's

Counsel's fees during the pendency of the case in Chapter 7 and after the ordered the conversion

to Chapter 13, and in support states:

1.  The Court had scheduled an Evidentiary Hearing for September 1, 2021, on the
    Trustee's Motion for the Disgorgement of Fees of Debtor's former counsel, Ms.
    Lyssette A. Morales Vidal, of L.A. Morales and Associates, PSC.   Prior to the
    commencement of the Hearing, the Court, *sua sponte*, raised the issue of whether the
    Former Chapter 7 Trustee had standing to pursue the action against Former Debtor's
    Counsel to disgorge her fees, due to her failure comply with her ethical and statutory
    responsibilities to conduct a pre-petition investigation as to Debtor's Financial Affairs
    and post-petition behavior.

2.  The Court referenced six cases upon which the Court based its jurisdictional inquiry.

1

3. The Trustee has reviewed the cases and will discuss their applicability to the facts of this case in the light of the Court's inherent jurisdiction to oversee that the integrity of the Bankruptcy Proceedings are maintained, including the actions of the attorneys appearing before them.

4. All the cases cited by the Court, question a Trustee's standing to pursue certain actions. The most recent case cited by the Court is *O'Neil v. O'Neil* (BAP. 1st Cir. 2021) decision of May 21, 2021.   In O'Neil a Chapter 13 Trustee appealed a order from the Bankruptcy Court on an Objection to Claimed Exemption over a motor vehicle.   The Bankruptcy Court decision to overrule the objection was made pre-confirmation of the Chapter 13 Plan.   The Appeal was made pre-confirmation, but at the time that the BAP heard the case, a Chapter 13 Plan had been confirmed.   The BAP found that the dispute has to be very much alive, not only when the case was filed, but must continue to have a personal stake in the ultimate disposition of the lawsuit.   The BAP described how "Mootness is closely related to Standing".   Further, it stated:

> The First Circuit has stated that a "fundamental polic[y]" underlying the case or controversy requirement of Article III is that "the courts, for reasons of judicial economy, ought not to decide cases in which the controversy is hypothetical, a judgment cannot grant effective relief, or the parties do not have truly adverse interests." Marchand v. Dir., U.S. Prob. Office, 421 F.2d 331, 332 (1st Cir. 1970). Accordingly, "when the circumstances out of which a controversy arise change so as to raise doubt concerning the adversity of the parties' interests, courts ordinar[i]ly dismiss cases as moot, regardless of the stage to which the litigation has progressed." Id.; see also ACLU of Mass. v. U.S. Conf. of Catholic Bishops, 705 F.3d 44, 52-53 (1st Cir. 2013) (stating that "[i]f events have transpired to render a court opinion merely advisory, Article III considerations require dismissal of the case") (citations omitted).

> "The difference between an abstract question and a controversy . . . is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case

whether there is such a controversy." <u>United States v. Amoskeag Bank Shares, Inc. (In re Amoskeag Bank Shares, Inc.)</u>, 239 B.R. 653, 659 (D.N.H. 1998) (quoting <u>Md. Cas. Co. v. Pac. Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941)). "The most important factors the court must balance are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" <u>Id.</u> (quoting <u>Abbott Labs. v. Gardner</u>, 387 U.S. 136, 149 (1967)). "The critical question in determining whether an issue is fit for judicial decision is whether the claim 'involves events that may not occur as anticipated, or indeed may not occur at all.'" <u>Id.</u> (quoting <u>Lincoln House, Inc. v. Dupre</u>, 903 F.2d 845, 847 (1st Cir. 1990)).
   *Id.* at pages 8 and 9.

5. The Court determined that since the decision on whether or not the exemption taken by the Debtor on the motor vehicle, would not affect the confirmed plan, the Trustee lacked appellate standing as the Trustee failed to demonstrate that the allowance of the exemption directly and adversely affected his pecuniary interest.  The Panel found that matter was moot and dismissed the appeal.   It was incumbent on the Trustee to demonstrate a continued existence of a live controversy and the Trustee failed to establish that he was a person aggrieved with standing to appeal.  Consequently, the Court lacked jurisdiction.

6. The difference of the instant case and the case of <u>O'Neil</u> is that the Trustee is not pursuing an action to increment the funds of bankruptcy estate, but to bring the attention of the Court, the pre and post-petition actions of debtor's former attorney, which affect the integrity of the bankruptcy processes.  The disgorgement (or any other sanction the Court deems proper)  is sought to deter the attorney to continue with actions (or inactions) in failing to comply with their obligations to investigate properly and independently a debtor's financial affairs and accurately complete for a debtor the schedules and financial affairs.   Documents, which are the cornerstone of disclosure

3

in any bankruptcy petition.   Any monetary sanction imposed by the court could be to disgorge to the Bankruptcy Estate, to the Court, or to the debtor.   The fact that the case was converted to Chapter 13, does not divest the Court's jurisdiction to oversee the bankruptcy proceedings in this case from the Petition date to its conclusion and to review its own orders.

7.   The Case of <u>Cousins International Food, Corp. v. Vidal</u>, 565 B.R. 450 (B.A.P. 1st Cir. 2017), the Panel determined whether a party seeking appeal is a "person aggrieved" by a bankruptcy court order has standing to appeal.   Defining that a "person aggrieved" is one whose pecuniary interests are "directly and adversely" affected by an order of the bankruptcy court.  Further. "[a] litigant qualifies as a 'person aggrieved' if the order diminishes his property, increases his burdens, or impairs his rights". *Id*, 565 B.R. 459 (citations omitted).     "The pecuniary interests … cannot be merely contingent or speculative." *Id*. at 460 (citations omitted).

8.   Further, the Court stated that being a party in interest is not necessarily synonymous with being a "person aggrieved" for appellate standing purpose.  In the <u>Cousins</u> case, the Court found that the appellant was not the Debtor and had no standing to bring the appeal, but it was the aggrieved party when it attempted to seek remedies under the terms of bankruptcy court order to which appellant was a party.

9.   As stated before, the Court has inherent Jurisdiction to consider all allegations of an attorney's misconduct that appears before the Court.   The Trustee is not pursuing an asset of the Estate, but to bring to the attention of the Court, conduct which affects the integrity of the bankruptcy process.  The Trustee was directly affected by such conduct because the Trustee, the creditors, the court and all interested parties, should be able to

4

rely on the accuracy of the bankruptcy schedules.   The administration of a Bankruptcy Estate is adversely affected by the inaccuracy of the schedules, which are solely due to a debtor's attorney failure to comply with the Bankruptcy Code and Rules create to assure these documents accuracy and reliability and conducting an investigation of a debtor's financial affairs.   *See* Section 326 and Fed. R. Bank. P. 2016.

10. In the case of *In re* Mateer, 559 B.R.1 (Bankr. Mass. 2016), the Bankruptcy Court dismisses a complaint filed by a Chapter 7 Trustee, because it found that a malpractice claim against Debtor's counsel for failure to record Debtor's homestead pre-petition was not property of the Bankruptcy Estate as the cause arouse after the filing of the petition and the Trustee had not standing to assert them.   In other words, no harm was caused until the Bankruptcy Petition was filed.   It should be noted that the dismissal is not because the court has no jurisdiction (as in the prior two cases), but that the trustee has no standing to pursue a post-petition asset.   Further, this case had been converted to Chapter 13.   Because it was converted and there was no allegation of Bad faith conversion, the malpractice claim is owned by the Debtor, under section 348(f)(1)(A).

11. The case of <u>Mateer</u>, is clearly distinguishable from the facts of this case.   There is no malpractice claim pursued by the Trustee to augment the bankruptcy estate.   The Court found that said cause of action belonged to the Debtor.   Not to say that in this case the Debtor may have a cause of action against Former Counsel, but is not what is sought by the Trustee.   This is a matter of bringing to the Court's attention, the inaccuracies of schedules, which were sworn under penalty of perjury by the Debtor and Counsel and by filing of unnecessary pleadings by Debtor's former attorney, including the filing of Motion to pay fees by installment which was clearly unnecessary.

12. In *In re* Hitchcock, 623 B.R. 312 (Bankr. E.D. Michigan), the Court questioned a former Chapter 7 Trustee standing to request the reconversion to Chapter 7, in lieu of dismissal, of a Debtor who had converted from Chapter 7 to Chapter 11 via an agreement with the United States Trustee Office.   The Court found that because the former trustee had no allowed and unpaid compensation (administrative or otherwise) in Chapter 11, he had no standing.   Further, his services were terminated upon conversion and had no standing to oppose the Debtor's request for dismissal in Chapter 11.

13. The Trustee does not disagree with the findings by the Court of Hitchcock.  However, these are inapposite to the facts of this case.    In seeking the disgorgement of fees received by former attorney of the Debtor, the Trustee seeks to bring to the attention of the Court conduct which directly affect the integrity of the Bankruptcy system.    The person with personal knowledge is the Former Trustee.  The party with the information and evaluation of the misinformation provided in this case is the Chapter 7 Trustee as the recipient of the documents provided by debtor and by former attorney and it is the Trustee who had the obligation to conduct the 341 Meeting of Creditors.   This is still one bankruptcy, and the actions (or inactions) by Former counsel affected this case.  To disregard the matter, would allow conduct unbecoming of a debtor's attorney to go without consequences.   Further, if the Trustee is required to bring the action in Chapter 13 (this action commenced in Chapter 7 long before conversion), the Trustee could request the allowance of an administrative claim for costs, which would provide for standing during the pendency of the Chapter 13 proceedings.   The prosecution of the

action against the Former counsel is not being billed to the Estate, as the Trustee was not hired as counsel for the Estate.   Most importantly, the Trustee understands that bringing to the attention of the Court with jurisdiction to oversee the conduct of attorneys before it, is more in the nature of a duty as officer of the court and as court appointed fiduciary.    The action of the Trustee is not to seek compensation, but to show the Court a wrong and it is up to the Court to determine if such wrong occurred sufficient to merit the imposition of sanctions.    Its more similar to an obligation towards the court as an officer of the court and in preserving the integrity of these bankruptcy proceedings.

14. In the case of *In re* Torres Martinez, 397 B.R. 158 (B.A.P. 1st Cir 2008) the Panel analyses the standing of the party that requested the dismissal of a Chapter 13 case for bad faith.   The Court understood that standing is a jurisdictional issue that can be determine at anytime in the proceedings.   In the case, the party moving for dismissal was found to have a pecuniary interest.   Therefore, it had standing to request the dismissal of the Chapter 13 case for bad faith filing.

15. The Trustee is seeking to maintain the integrity of the bankruptcy process.   The Court has inherent jurisdiction to oversee, that the attorneys appearing before it conduct the proceedings before the court with the highest ethical standards.   The whole bankruptcy system depends on this oversight.  Regardless, of who brings the matter to the attention of the court.   Again, the status of the Bankruptcy case will not change by the Trustee's Motion.   A pecuniary interest is not necessary to advise the Court of conduct which affect the Bankruptcy processes.

16. The Bankruptcy Appellate Panel, in *In re* Newcare Health Corp, 244 B.R. 177 (BAP

1st Cir. 2000) determined that a party in interest, must also show that it has standing,

which in the case was holding a pecuniary interest by filing a proof of claim.   The

Court stated:

> Standing is a "threshold question in every federal case, determining the power of the courtto entertain the suit." *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Hence, "a defect in standing cannot be waived; it must be raised, either by the parties or by the court, whenever it becomes apparent." *U.S. v. AVX Corp.,* 962 F.2d 108, 116 n. 7 (1st Cir.1992).

> The inquiry into standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth,* 422 U.S. at 498, 95 S.Ct. 2197. "In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a case or controversy' between himself and the defendant within the meaning of Art. III." *Id.* Apart from this minimum constitutional mandate, the Supreme Court recognizes other limits ". . . on the class of persons who may invoke the courts' decisional remedial powers." *Id.* at 499, 95 S.Ct. 2197. These prudential limitations are self-imposed rules of judicial restraint:
> These considerations, which militate against standing, principally concern *whether the litigant (1) asserts the rights and interests of a third party and not his or her own,* (2) presents a claim arguably falling outside the zone of interests protected by the specific law invoked, or (3) advances abstract questions of wide public significance essentially amounting to generalized grievances more appropriately addressed to the representative branches. *Benjamin v. Aroostook Medical Center, Inc.,* 57 F.3d at 104 (emphasis added).

> "The burden of alleging facts necessary to establish standing falls upon the party seeking to invoke the jurisdiction of the court. . . . In conducting our review, we are obliged to `accept as true all material allegations of the complaint, and . . . construe the complaint in favor of the complaining party.'" *Id.* (*quoting Warth,* 422 U.S. at 501, 95 S.Ct. 2197) (other citations omitted). *Id.*

8

17. The Court has jurisdiction to oversee the conduct of the attorneys appearing before it. All the cases cited by the Court determine standing on a pecuniary interest of the party. Further, they relate to actions against a Debtor, or a Creditor or a Trustee, when requesting a remedy to obtain a pecuniary interest.   None of the cases relate to the actions of an attorney in bankruptcy and the preservation of Bankruptcy integrity.  For the Motion to Disgorge (requested to deter an attorney's inappropriate conduct), a pecuniary interest of the Bankruptcy Estate, does not seem necessary.  The Trustee's Motions made the Court aware of the circumstances surrounding the claim and the Court may consider the matter under Section 105 of the Bankruptcy Code.   Overseeing the orderly administration of the case before the court and considering the conduct of the attorneys which appear before it, confers the Court with inherent jurisdiction to correct the actions of an attorney by enforcing appropriate action, including the disgorgement of fees.

18. In *In re* Bartmann, 320 B.R. 725 (Bankr. N.D. Okla. 2004) the Court stated:

11 U.S.C. § 329. Bankruptcy Rule 2017 implements Section 329 as follows—

> On motion by any party in interest ..., the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly, and in contemplation of the filing of a petition under the Code by or against the debtor ... to an attorney for services rendered or to be rendered is excessive.

> Fed. R. Bankr.P.2017. "The obvious purpose of Section 329 and Rule 2016(b) is to enable the creditors to review the debtor's transactions with his attorneys and to seek, if necessary, the return of excessive payments made by a desperate debtor to an attorney on the eve of bankruptcy." *In re Meyer,* 50 B.R. 3, 4 (Bankr.S.D.Fla. 1985).

9

Courts have long recognized that the debtor is in a vulnerable position and is highly dependent on its attorney and therefore will be reluctant to object to the fees of the attorney. The purpose of this process is to prevent overreaching by an attorney and provide protection for creditors. 3 *Collier on Bankruptcy* ¶ 329.01 (Lawrence P. King ed., 15th ed. rev.1997); *see also In re Busy Beaver Bldg. Ctrs., Inc.,* 19 F.3d 833, 844 (3rd Cir. 1994)("Disagreeable as the chore may be, the bankruptcy court must protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors."); *Burd v. Walters (In re Walters),* 868 F.2d 665, 668 (4th Cir.1989) (noting that legislative  history states  that the purpose of § 329 is to protect creditors and debtor from overreaching by attorneys); *Land v. First Nat'l Bank (In re Land),* 116 B.R. 798, 804 (D.Colo.1990) (citing legislative history and noting that serious potential for overreaching by debtor's attorney should be subject to careful scrutiny), *affd & remanded,* 943 F.2d 1265 (10th Cir.1991). *Jensen v. United States Trustee (In re Smitty's Truck Stop, Inc.),* 210 B.R. 844, 848 (10th Cir. BAP 1997). "Compensation to a debtor's counsel may be considered excessive for a number of reasons including the size of the fee, the nature of the services provided, failure to disclose the information required by Rule 2016(b), unethical conduct or other causes." *In re Martin,* 197 B.R. 120, 125 (Bankr.D.Colo. 1996), *citing Quiat v. Berger (In re Vann),* 136 B.R. 863 (D.Colo.1992); *In re Land,* 943 F.2d 1265 (10th Cir.1991).

19. The Trustee is a party in interest, which during the pendency of the Chapter 7 should be allowed to bring to the attention of the Court under Section 329, Ruled 2016 and Rule 2017 conduct of a debtor's counsel, which fall short and fails to comply with the standards required by the Code and the Rules.  Not allowing a court appointed officer to bring to the attention of the Court the actions, inactions and consequences of these in a Bankruptcy Case by an attorney, would be an injustice and contrary to the preservation of the integrity of the bankruptcy process.   How would the Court know of the wrong conduct or action otherwise?  Certainly, a Chapter 7 Trustee would be the best source to inform the Court of the events occurring during the proceedings held pursuant to the provisions of the Bankruptcy Code, like the 341 Meeting of Creditors.

20. As stated before, Section 105(a) provides that the bankruptcy court:

> may issue any order ... that is necessary or appropriate to carry out
> the provisions of this title. No provision of this title providing for
> the raising of an issue by a party in interest shall be construed to
> preclude the court from, sua sponte, taking any action or making any
> determination necessary or appropriate to enforce or implement
> court orders or rules, or to prevent an abuse of process.
>
> 11 U.S.C. § 105(a). While the authority granted under § 105(a) is
> equitable and broad, Marrama v. Citizens Bank of Massachusetts ,
> 549 U.S. 365, 127 S. Ct. 1105 1112, 166 L.Ed.2d 956 (2007), it does
> not authorize the creation of substantive rights that are otherwise
> unavailable under applicable law, or constitute "a roving
> commission to do equity." In re Dairy Mart Convenience Stores, Inc.
> , 351 F.3d 86, 92 (2d Cir. 2003) (internal citations omitted).
> However, it is beyond dispute that the authority of this Court under
> § 105(a) includes the power to enforce its own orders. E.g. Matter
> of Motors Liquidation Co ., 829 F.3d 135, 153 (2d Cir. 2016)
> ("[T]he [Bankruptcy] Code charges the bankruptcy court with
> carrying out its orders .... Hence, a bankruptcy court "plainly ha[s]
> jurisdiction to interpret and enforce its own prior orders." (citing §
> 105(a) and In Matter of Motors Liquidation Co. , 829 F.3d 135, 153
> (2d Cir. 2016) ).7
>
> Disgorgement is an equitable remedy used to wrest ill-gotten gains
> from a wrongdoer. See, e.g., SEC v. Huffman, 996 F.2d 800, 802
> (5th Cir.1993). This Court also may order disgorgement of fees to
> address a breach of fiduciary duty. See In re Food Mgmt. Grp., LLC
> , 380 B.R. 677, 713 (Bankr. S.D.N.Y. 2008) ("Bankruptcy law also
> gives a court wide discretion in fixing a remedy for breach of
> fiduciary duties by a bankruptcy professional. The available
> remedies range from sanctions or the refusal, reduction or
> disgorgement of attorney's fees.") (internal citations omitted).
> In re JNL Funding Corp., 620 B.R. 25 at 28, (Bankr. E.D. N.Y.
> 2020). (Action brought for disgorgement of fees by a Chapter 7
> Trustee on a Converted Chapter 11.  The Court found that
> disgorgement was not to remedy the administratively insolvent
> estate, but to enforce the Plan and Confirmation Order from funds
> entrusted to a liquidation trustee.)

21.  There are a multitude of examples in which a Chapter 7 Trustee has brought to the

attention of the Court events and findings during Chapter 7, which not withstanding the

conversion to Chapter 13, the former trustee was able to continue to pursue.  The most notable is the case of *In re* Marrama, 549 U.S. 365 (2007).   The Supreme Court ruled that the "purpose of the Bankruptcy Code is to grant a "fresh start" to the "honest but unfortunate debtor"".  *Id* at 367.  "An issue that is arisen with disturbing frequency is whether a debtor who acts in bad faith prior to, or in the course of, filing a Chapter 13 petition by, for example, fraudulently concealing significant assets, thereby forfeits his right to obtain Chapter 13 relief.  The issue may arise at the outset of a Chapter 13 case in response to a motion by creditors or by the United States trustee either to dismiss the case or convert it to Chapter 7, see §1307(c).   It also may arise in a Chapter 7 when a debtor files a motion under §706(a) to convert to Chapter 13." *Id* at 368.   The Supreme Court further stated that "In practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct, **including acts committed in an earlier Chapter 7 proceeding**, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13.  That individual, in other words, is not a member of the class of " 'honest but unfortunate debtor[s]' " that the bankruptcy laws were enacted to protect." (Citations omitted) (Emphasis added).  *Id* at 374.

22. The Trustee has already filed an opposition to the conversion of this case to Chapter 13, due to bad faith.   *See* Dkt. No. 128.

23. The Bankruptcy Court has authority to suspend an attorney from practicing before it.  "This authority comes from three sources: inherent authority, statutory authority, and local rules.  *See*: *In re* Disciplinary Proceedings, 282 B.R. 79 (1ˢᵗ Cir. BAP 2002).  The First Circuit Bankruptcy Appellate Panel in In re Disciplinary Proceedings, stated:

As a federal court, a bankruptcy court has the inherent power to sanction, by suspension

or disbarment, any attorney who appears before it. (Citations omitted)." *In re* Ebel,

371 B.R. 866, 868 (Bankr.S.D. Ill. 2007).

24. The Ebel Court continued to state:

> The United States Supreme Court in
> *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct.
> 2123, 115 L.Ed.2d 27 (1991), held that a federal
> court has the inherent power to control admission
> to its bar and to discipline attorneys before it. A
> Bankruptcy Court not only has the authority to
> discipline an attorney for misconduct, but it also
> has the responsibility to take action in order to
> protect the integrity of the Court, its bar, and the
> public from such misconduct. *In re Derryberry,*
> 72 B.R. 874 (Bankr.N.D.Ohio 1987). *See also: In
> re Computer Dynamics, Inc.,* 253 B.R. 693
> (E.D.Va.2000).
>
> In addition, to this Court's inherent authority
> to discipline attorneys who practice before it, the
> Court also has statutory authority pursuant to 11
> U.S.C. § 105(a). In *In re Disciplinary
> Proceedings, supra,* at 86, the Court stated that
> Section 105(a) of the Bankruptcy Code:
>
> ... empowers a bankruptcy court to sanction
> and otherwise, discipline attorneys who appear
> before it, given that incompetent attorneys
> frustrate the Bankruptcy Code's purpose of
> prompt administration of the estate and equitable
> distribution of assets.
>
> Section 105(a) has been used on many
> occasions to deny attorneys the privilege of
> practicing before a Court. *See: In re MPM
> Enterprises, Inc.,* 231 B.R. 500 (E.D.N.Y.1999); *In
> re Gunn,* 171 B.R. 517 (Bankr.E.D.Pa.1994); and
> *In re Computer Dynamics, Inc., supra,* at 698.
>
> *Id at 868.*

13

25. In the case of *In re* Roman, 574 B.R. 430 (Bankr. P.R. 2017), this Court has previously analyzed the provision of Section 105, as basis for the imposition of sanctions against a debtor's attorney for failure to meet its duties under 11 U.S.C. §329 and Fed. R. Bankr. P. 2016(b). The Court stated:

Section 105(a) provides:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process. 11 U.S.C. § 105.

The United States Courts of Appeal for the First Circuit has stated " Section 105(a) of the Code provides the bankruptcy court broad authority to "exercise its equitable powers-where 'necessary' or 'appropriate'-to facilitate the implementation of other Bankruptcy Code provisions." In re Nosek, 544 F.3d 34, 43 (1st Cir. 2008) ; quoting Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 444 (1st Cir.2000). However, "[i]t is hornbook law that § 105(a)"does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code." Law v. Siegel, ——U.S. ——, 134 S.Ct. 1188, 1194, 188 L. Ed. 2d 146 (2014) ; quoting 2 Collier on Bankruptcy¶ 105.01[2], p. 105–6 (16th ed. 2013).

Moreover, the First Circuit Court of Appeals has stated that "[b]ecause § 105(a) gives courts this power to ensure compliance with its own orders, we have referred to it as conferring "statutory contempt powers" which "inherently include the ability to sanction a party. In re Nosek, 544 F.3d 34 at 43–44, quoting Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439 at 445 ; see also In re Morgenstern, 542 B.R. 650, 660 (Bankr. D.N.H. 2015), aff'd sub nom. White v. Gordon, 558 B.R. 15 (D.N.H. 2016) (" Section 105(a) empowers the Court to sanction a party where the sanction is "demonstrably necessary to preserve a right elsewhere provided in the Code."). Courts may thus regulate who may appear before them, may

14

sanction attorneys or their clients for abuse of process and other harms." 2 Collier on Bankruptcy¶ 105.02[6][b](16th ed. 2016).

In the instant case, the request for sanctions is not based on a violation of a court order but on alleged violations of provisions of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure and of the ABA Model Rule of Professional Conduct. The U.S. Trustee's requests for sanctions is based, in part, on attorney Conde's failure to comply with Section 329 and Fed. R. Bankr. P. 2016(b)'s disclosure requirement which the court will proceed to examine.

*Section 329 and Fed. R. Bankr. P. 2016(b)*

Section 329 states that:
**(a)** Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
11 U.S.C. § 329.

In addition, Fed. R. Bankr. P. 2016(b) provides:
Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the U.S. Trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the U.S. Trustee within 14 days after any payment or agreement not previously disclosed.

Fed. R. Bankr. P. 2016.

15

"The Bankruptcy Code requires fee disclosure so that courts can "prevent overreaching by debtors' attorneys and give interested parties the ability to evaluate the reasonableness of the fees paid." In re Ortiz, 496 B.R. 144, 148 (Bankr. S.D.N.Y. 2013) (citations omitted). Thus, "[t]he heart of this framework is disclosure." Alan N. Resnick & Henry J. Sommer, 9 Collier on Bankruptcy¶ 2016.01 (16th ed. 2015).

Compliance with Section 329 and Fed. R. Bankr. P. 2016(b) is mandatory. In re Parrilla, 530 B.R. 1, 10 (Bankr. D.P.R. 2015) ("Debtor's attorneys must comply with the mandatory disclosure requirements of 11 U.S.C. § 329 and Fed. R. Bankr. P. 2016(b) to receive compensation."). "**In short, the Rule 2016(b) statement is an attorney's certification on which the Debtor, the Court, the Trustee, and the creditors rely. It is not a meaningless paper that attorneys can ignore or blithely treat as insignificant**." In re Kowalski, 402 B.R. 843, 848 (Bankr. N.D. Ill. 2009).

Accordingly, "[c]ourts have been ready to impose severe sanctions on professionals who fail to comply with the rules and statutory scheme governing compensation." Alan N. Resnick & Henry J. Sommer, 9 Collier on Bankruptcy¶ 2016.01 (16th ed. 2015). "Failure to comply with Bankruptcy Rule 2016 can provide grounds for disqualification of debtor's counsel, disallowance of fees in whole or in part and disgorgement of fees." McMullen v. Schultz, 428 B.R. 4, 13 (D.Mass. 2010).

In the instant case, the U.S. Trustee argues that attorney Conde violated Section 329 and P Fed. R. Bankr. P. 2016(b) by filing two statement of compensation that did not accurately disclose the legal fees she received. On the 2*016(b) Statement* filed by attorney Conde on July 3, 2015, (Docket No. 1, p 8) she certified that she agreed to receive $1,000.00 for her services and had receivedb$0.00 prior to the filing of the statement. Contrariwise, the Debtors testified that on that same date they made a payment of $700 in attorney Conde's office. Moreover, on August 25, 2015, attorney Conde filed an *Amended 2016(b) Statement* certifying that she agreed to accept $2,100.00 for her legal services and that she received $1,300.00 prior to the filing of the statement. (Docket No. 24, p. 1). However, as the U.S. Trustee notes, according to the Debtors' testimony by August 25, 2015, the Debtors had already paid $2,060.00, of which

16

$1,600.00 corresponded to attorney Conde's fees[9] . Therefore, even without considering the first *2016(b) Statement* and attorney Conde's argument that she did not know that the Debtors made a payment on the same date the petition was filed, the court is still forced to conclude that attorney Conde's 2016(b) statements did not contain adequate disclosure as the information contained in the *Amended 2016(b) Statement* is inconsistent with the Debtors' sworn statement and testimony at the 341 meetings[10] . *Id.* at 440 and 441. (Emphasis Added)

26. Similarly in this case, as in the case of *Roman*, Debtor's former counsel failed to correct and properly address the violations and inconsistencies once she was informed of payment by the Debtors.  Further, the Court stated:

The court cautions attorneys against shifting responsibility for their actions to their employees. ABA Model Rule of Professional Conduct 5.3(c)[16] provides with respect to a nonlawyer employed or retained by or associated with a lawyer that:

a lawyer shall be responsible for
conduct of such a person that would
be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:

(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action. Thus, attorneys can be held responsible for the actions taken by their non-attorney employees. This is so because "[s]uch assistants, whether employees or independent contractors, act for the lawyer in rendition of the lawyer's professional services." MRPC Rule 5.3, comment
2. Therefore "[a] lawyer must give such assistants appropriate instruction and supervision concerning the ethical aspects of their employment, particularly regarding the obligation not to disclose information relating to representation of the client, and should be

responsible for their work product." Id. In addition, "[t]he measures employed in supervising nonlawyers should take account of the fact that they do not have legal training and are not subject to professional discipline." Id. This is especially relevant in a case like this where it appears that attorney Conde delegated various responsibilities to her secretary while she was out

of the office dealing with a family emergency. *Id*. at 445.

27. This Court has authority to impose appropriate sanctions as stated in the Roman case:

As previously noted, "[b]ecause disclosure under section 329(a) and Rule 2016(b) is "central to the integrity of the bankruptcy process," failure to disclose is sanctionable. The sanctions can include partial or total denial of compensation as well as partial or total disgorgement of fees paid." In re Jackson, 401 B.R. 333, 340 (Bankr. N.D. Ill. 2009) (internal citations omitted); quoting In re Andreas, 373 B.R. 864, 872 (Bankr.N.D.Ill.2007).

See In re Park–Helena Corp., 63 F.3d 877, 882 (9th Cir. 1995) ("Even a negligent or inadvertent failure to disclose fully relevant information may result in a denial of all requested fees."); In re Whitcomb, 479 B.R. 133, 144 (Bankr. M.D. Fla. 2012) ("An attorney who fails to comply with the requirements of § 329(a) and Rule 2016(b) is subject to "forfeiture of 'any right to receive compensation for services rendered on behalf of the debtor,' and the disgorgement of any funds already paid by the debtor.") (citations omitted); In re McMullen, 2009 WL 1490581, at *15 (Bankr. D. Mass. May 27, 2009) ("The United States Court of Appeals for the First Circuit has made clear that "full and timely disclosure of the details" of any fee arrangement is mandatory. Failure to do so can provide grounds for disqualification of debtor's counsel, disallowance fees in whole or part, disgorgement of fees, and the invalidation of a security interest.") (citations omitted). Therefore, "[t]he Court enjoys broad discretion in designing appropriate remedies to deal with violations of § 329(a) and Rule 2016(b)". In re Blackburn, 448 B.R. 28, 40 (Bankr. D. Idaho 2011). See also; In re Sandpoint Cattle Co., LLC, 556 B.R. 408, 426 (Bankr. D. Neb. 2016) ("The decision to reduce fees, deny fees or order disgorgement of fees under section 329 is within the sound discretion of the bankruptcy court.") (citations omitted); In re Saturley, 131 B.R. at 517 ("The court may exercise its discretion to

deny or reduce fees for counsel's failure to disclose its fee
arrangements whether or not actual harm accrues to the estate.").
"The disclosure rules are to be applied literally, even if the results
are at times harsh."  In re Blackburn, 448 B.R. at 41.  *Id.* at 445.

28.  As a court appointed fiduciary, the Former Trustee is bringing to the attention of the
Court actions (or inactions) taken by Debtor's former Counsel, which were fully
described in the Trustee's Motion for Disgorgement of Fees and the Trustee's Reply to
Debtor's Opposition.  *See* Dkt. Nos. 28 and 54.   At the time, the case was still in
Chapter 7 and the Attorney for the Debtor had not been released as Debtor's Counsel.
The Court retained jurisdiction over the matter after authorizing the withdrawal of
Debtor's Counsel (Dkt. No. 55).  The Court has inherent jurisdiction to oversee the
actions of the attorneys appearing before it.  The former chapter 7 trustee is bringing to
the attention of the court circumstances which merit its consideration, and oversite into
the conduct of debtor's former counsel in connection with this Bankruptcy Case.

29. The Motions to Disgorge are not a matter of having a monetary stake in the outcome
of the bankruptcy.  But it is a matter of the integrity of our Bankruptcy System.   Even
if the Court, finds that the Former Trustee has no standing, the Court, *sua sponte*, can
take the matter into consideration under Section 105 of the Bankruptcy Code.

Respectfully Submitted, this 21st day of September, 2021.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent
to Debtor's counsel, Jesus E. Batista Sanchez at hjeb@batistasanchez.com  to Debtor, Lizette
Alejandro Pena, at her mailing address of Paseos de la Ceiba, 182 Calle Arce D2, Juncos, PR
00777, and to attorney Luisa Valle Castro, Esq. at condecarmen@condelaw.com and Lyssette A.

19

Morales Vidal, Esq.  at lamoraleslawoffice@gmail.com on this 21th day of September, 2021.

*/s/ Noreen Wiscovitch-Rentas*
NOREEN WISCOVITCH-RENTAS
CHAPTER 7 TRUSTEE
PMB 136
400 Juan Calaf Street
San Juan, Puerto Rico 00918
Tel. (787) 946-0132
 E-mail: noreen@nwr-law.com